Matter of Agam S. B.-L. (Janna W.--Richard P.) (2019 NY Slip Op 01405)





Matter of Agam S. B.-L. (Janna W.--Richard P.)


2019 NY Slip Op 01405


Decided on February 27, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on February 27, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ALAN D. SCHEINKMAN, P.J.
JOHN M. LEVENTHAL
JOSEPH J. MALTESE
VALERIE BRATHWAITE NELSON, JJ.


2017-02949
2017-04381
 (Index No. 32074/16)

[*1]In the Matter of Agam S. B.-L. (Anonymous). SCO Family of Services, petitioner-respondent; Janna W. (Anonymous), appellant; Richard P. (Anonymous), nonparty-respondent.


Janna W., Ozone Park, NY, appellant pro se.



DECISION & ORDER
In a proceeding pursuant to Mental Hygiene Law article 81 to appoint a guardian of the person and property of Agam S. B.-L., an alleged incapacitated person, in which Janna W. cross-petitioned, inter alia, to be appointed guardian of the person and property of Agam S. B.-L., Janna W. appeals from (1) a judgment of the Supreme Court, Nassau County (Arthur M. Diamond, J.), dated February 10, 2017, and (2) an order of the same court dated March 8, 2017. The judgment, after a hearing, granted the petition to appoint a guardian of the person and property of Agam S. B.-L. and appointed nonparty Richard P. as guardian of the person and property of Agam S. B.-L. The order denied the motion of Janna W., in effect, to vacate the judgment and for a jury trial on that branch of her cross petition which was to be appointed guardian of the person and property of Agam S. B.-L.
ORDERED that the judgment is affirmed, without costs or disbursements; and it is further,
ORDERED that the order is affirmed, without costs or disbursements.
Janna W. (hereinafter the mother) was previously found to have medically and educationally neglected her son, Agam S. B.-L. (hereinafter Agam), after a fact-finding hearing, upon evidence that she "failed to timely seek appropriate psychiatric treatment for [Agam], gave him prescription psychotropic medication that had not been prescribed to him by a doctor, and failed to enroll him in any school or home-school program or to seek out services for him through the Department of Education Committee for Special Education" (Matter of Agam B. [Janna W.], 143 AD3d 702, 703). Agam was placed in the custody of the Commissioner of Social Services of the City of New York and ultimately placed in a residential facility under the auspices of the petitioner, SCO Family of Services, on January 15, 2014, when he was 18 years old, where he has remained since. After receiving a variety of diagnoses, including, but not limited to, emotional disturbance, mental retardation, and schizophrenia, Agam was diagnosed with autism spectrum disorder and severe intellectual disability. The mother disagrees with these diagnoses and has expressed her belief that Agam was suffering from post-traumatic stress disorder from witnessing certain events during the revolution in Tibet while he and the mother had lived there temporarily or that Agam was in a deep meditative state.
The petitioner was directed by the Family Court to commence a proceeding to appoint a guardian for Agam prior to his reaching the age of 21. Several days before Agam's 21st birthday, the petitioner commenced this proceeding to appoint a guardian of the person and property of Agam, alleging that he was "unable to appreciate the nature of his disabilities and [was] unable to make informed decision[s] about his need for a Guardian." The petition alleged that Agam was unable to care for himself or to self-advocate, and that he required daily administration of medication due a history of aggressive behavior, which he was unable to self-administer. The petition also alleged that the mother was not suited to act as Agam's guardian because she had been found to have educationally and medically neglected Agam, she had a history of absconding with Agam, and she fails to appreciate the nature and extent of his condition.
The mother filed a cross petition requesting that Agam be emancipated and permitted to return home with her because she "best understands and is best qualified to provide for Agam's educational and medical needs." In the alternative, the mother requested that she be appointed Agam's guardian. Robert P., Agam's father (hereinafter the father), requested to be appointed Agam's guardian, asserting that the mother was not an appropriate choice of guardian because her custody of Agam had been revoked three times, she did not recognize the part she had played in Agam's removal from her custody, as she blamed his removal on political retaliation for her human rights work, and she had a history of absconding with Agam when he was in her custody.
The Supreme Court held a fact-finding hearing, during which Agam was present and given the opportunity to address the court. However, he was unwilling or unable to do so. The evidence adduced at the hearing established, inter alia, that Agam was unable to care for himself and required a great deal of support from staff of the residential facility to perform basic activities of daily living and medication management. The father testified that he was willing and able to act as Agam's guardian, that he was in agreement with Agam's continued placement with the petitioner, and that he wished to involve the mother as much as possible in decisions regarding Agam's care. The mother testified that the petitioner failed to provide proper medical care or educational services to Agam, that she could provide the same medical care and more appropriate educational services to Agam, that, according to Tibetan experts, Agam needed to reside in the community and not in a residential treatment facility, and that Agam did not suffer from an intellectual disability.
After the hearing, the Supreme Court determined that Agam was an incapacitated person as defined in Mental Hygiene Law article 81 and issued a judgment dated February 10, 2017, granting the petition to appoint a guardian of Agam's person and property and appointing the father as Agam's guardian. Thereafter, the mother moved, in effect, to vacate the judgment and for a jury trial on that branch of her cross petition which was to be appointed Agam's guardian. In an order dated March 8, 2017, the court denied the mother's motion on the ground that she had waived any right to a jury trial on her cross petition. The mother appeals from the judgment and the order.
In order for a court to exercise its authority to appoint a guardian for an alleged incapacitated person, it must make a two-pronged determination (see Mental Hygiene Law § 81.02[a]; see also Matter of Samuel S. [Helene S.], 96 AD3d 954). First, the court must determine that "the appointment is necessary to provide for the personal needs of that person, including food, clothing, shelter, health care, or safety and/or to manage the property and financial affairs of that person" (Mental Hygiene Law § 81.02[a][1]). Second, the court must determine "that the person agrees to the appointment, or that the person is incapacitated" (Mental Hygiene Law § 81.02[a][2]). With respect to the second prong, "[t]he determination of incapacity . . . shall consist of a determination that a person is likely to suffer harm because" (1) "the person is unable to provide for [his or her] personal needs and/or property management" and (2) "the person cannot adequately understand and appreciate the nature and consequences of such inability" (Mental Hygiene Law § 81.02[b][1], [2]). In reaching its determination as to whether an individual is incapacitated, the court is required to "give primary consideration to the functional level and functional limitations of the person" (Mental Hygiene Law § 81.02[c]). "A determination that a person is incapacitated . . . must be based on clear and convincing evidence" (Mental Hygiene Law § 81.12[a]; see Mental Hygiene Law § 81.02[b]). "The burden of proof shall be on the petitioner" (Mental Hygiene Law § 81.12[a]; see Matter of Samuel S. [Helene S.], 96 AD3d at 957).
Here, the petitioner established by clear and convincing evidence that Agam is an incapacitated person as defined in Mental Hygiene Law article 81. Furthermore, based upon the totality of the evidence, we discern no basis to disturb the Supreme Court's determination to appoint the father as guardian of Agam's person and property (see Matter of Susan Jane G., 33 AD3d 700).
The mother's remaining contentions are without merit.
SCHEINKMAN, P.J., LEVENTHAL, MALTESE and BRATHWAITE NELSON, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court